IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

RECEIVED
USDC, CLERK, CHARLESTON, SC

2011 MAR 31  A 10: 46

| | |
|---|---|
| James D. Tinsley, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:09-2455-SB |
| ) | |
| Detective Brian Wight, ) | |
| Investigator R. Bogan, ) | **ORDER** |
| Sheriff Chuck Wright, and ) | |
| Spartanburg County, ) | |
| ) | |
| Defendants. ) | |



This matter is before the Court upon Plaintiff James D. Tinsley's ("the Plaintiff" or "Tinsley") *pro se* complaint alleging violations of his Constitutional rights. The record contains a report and recommendation ("R&R") of a United States Magistrate Judge, which was made in accordance with 28 U.S.C. § 636(b)(1)(B). In the R&R, the Magistrate Judge recommends that the Court deny the Plaintiff's motions for partial summary judgment and to stay and grant the Defendants' motion for summary judgment. The Plaintiff filed timely objections to the R&R, and the matter is ripe for review. See 28 U.S.C. § 636(b)(1) (stating that a party may object, in writing, to an R&R within fourteen days after being served with a copy of that report).

## BACKGROUND

The Plaintiff initially filed this action on September 17, 2009, against Detective Brian Wight, Investigator Bogan, Sheriff Chuck Wright (all in their individual and official capacities), and the County of Spartanburg. In his initial complaint, the Plaintiff alleged an unlawful seizure of his property in violation of the Fourth, Fifth, and Fourteenth

Amendments. The Plaintiff included the following "statement of claim":

> (1) At all times relevant all of the defendants were acting under color of law and pursuant to their authority as police officers or public officials.
>
> (2) During November to December, 2006, Plaintiff was invited to stay in an RV by Hogan Hugh Justice, III, in a campground in Cherokee, North Carolina.
>
> (3) Mr. Justice informed Plaintiff that he and his family owned the RV and that Plaintiff could stay in the RV when visiting the casino in Cherokee.
>
> (4) Plaintiff stayed in the RV numerous times during the period and brought many of his personal belongings to leave in the RV and use while in Cherokee, including, but not limited to: one digital camera ($400.00); one Sony Camcorder ($400.00); various clothing items such as shoes, pants, shorts, underwear, socks, coats, etc. . . . ($1,200.00); two fishing rods and waders with boots ($300.00); dishes, food, coffee maker and toaster ($200.00); a safe ($300.00); and $42,000.00 in cash kept in the safe.
>
> (5) During an investigation in December, 2006, Defendants Wight and Bogan discovered the RV might be stolen. On December 5, 2006, Defendants wight and Bogan went to Cherokee, North Carolina to recover the stolen RV.
>
> (6) Defendants Wight and Bogan processed the RV, seized Plaintiffs' personal property contained inside the RV, released the RV to its rightful owner and returned to Spartanburg, South Carolina with Plaintiff's personal property.
>
> (7) Hogan Hugh Justice, III, has plead[ed] guilty to the theft of the RV and maintains that Plaintiff was not involved in the RV's caption and asportation in any way.
>
> (8) Plaintiff has reportedly requested the return of his property but has been ignored and refused. None of Plaintiff[']s personal property was stolen, contraband, or illegal to own or possess. None of the property was evidence of criminal activity nor evidence necessary for any criminal proceeding.
>
> (9) Plaintiff has always admitted to staying and having belongings in the RV. The possession of th[e] lawfully owned property by police[ ] would, in no way[,] assist them in proving any new facts.
>
> (10) The continued seizure of Plaintiff's property without a warrant, due process of law, consent, or exigent circumstances constitutes a meaningful interference in Plaintiff's possessory interests in the property and constitutes

the deprivation of property without a due process hearing.

(11) Plaintiff had a reasonable expectation to be free from the continued seizure of his property without a warrant or due process of law.

(12) Defendants Chuck Wright and the County of Spartanburg[ ] knew or should have known[ ] that Defendants Wight and Bogan[ ] were acting in concert to violate clearly established law, in continuing to seize Plaintiff[']s property without prior judicial authorization and without providing a due process hearing.

(13) Defendants were negligent in their actions and showed deliberate illegal intentions against Plaintiff's rights by acting in concert to continue to seize and deprive Plaintiff of his possessory interests in his lawfully owned property without a warrant, court order, probable cause, exigent circumstances, due process of law, or Plaintiff's consent. All of the defendants acted in bad faith, wantonly, recklessly, willfully, maliciously, with the intent of injuring and oppressing the Plaintiff by reason of which Plaintiff is entitled to an award of $1,000.00 per day in punitive damages.

(14) Defendants County of Spartanburg and Chuck Wright[ ] have created a policy and promote a policy to act in concert with the other Defendants herein to seize and continue to deprive people of their personal property without warrants, prior judicial approval, probable cause, exigent circumstances, or their consent, and to deprive them of their property without a due process hearing.

(15) FIRST CAUSE! Plaintiff has been deprived of his right to be free from unreasonable seizures of his property pursuant to the Fourth Amendment, damaging him in the amount of $44,800.00.

(16) Second cause! Plaintiff has been deprived of his property without a prior due process hearing in violation of the Fifth and Fourteenth Amendments, damaging him in the amount of $44,800.00.

(Entry 1 at 3-5.) The Plaintiff requested a jury trial as well as a declaratory judgment, injunctive relief, compensatory damages, and punitive damages. (Id. at 5.)

On September 30, 2009, the Magistrate Judge filed an R&R, finding that the Plaintiff's complaint was subject to summary dismissal for failure to state a claim. Essentially, the Magistrate Judge concluded that the Plaintiff's claim regarding the alleged

loss or negligent safekeeping of his personal property by law enforcement officials failed to state a constitutional claim cognizable under 42 U.S.C. § 1983.

The Plaintiff filed written objections to the R&R as well as a motion to amend his complaint. In these filings, the Plaintiff asserted that the Magistrate Judge misinterpreted his claims and that his claims are premised on the unconstitutional seizure of his property and not the negligent loss or safekeeping of his property. Based on the alleged misinterpretation, on February 4, 2010, this Court declined to adopt the R&R, granted the Plaintiff's motion to amend his complaint, and remanded the matter to the Magistrate Judge for further proceedings.

On February 9, 2010, the Plaintiff filed his amended complaint, alleging the same facts as he alleged in his initial complaint but clarifying the nature of his claims. In his amended complaint, the Plaintiff acknowledges that the seizure of lawfully-owned property may be acceptable to allow an inventory, but he points out that the property must be returned within a reasonable amount of time or the seizure becomes unreasonable. (Entry 24 at 4.) The Plaintiff claims that he has been deprived of his right to be free from unreasonable warrantless seizures of his lawfully-owned property under the Fourth Amendment, and that he has been deprived of his "possessory interest" in his lawfully-owned property without a prior due process hearing pursuant to the Fifth and Fourteenth Amendments. (Id. at 6.)



On March 22, 2010, the Defendants filed an answer to the Plaintiff's amended complaint, and then on May 6, 2010, the Defendants filed a motion for summary judgment. In their motion, the Defendants noted that the Plaintiff was arrested by Spartanburg Sheriff's Deputies on December 5, 2006, on outstanding warrants from the City of

4

Woodruff, and that on the same day, Defendant Wight traveled to Cherokee to secure the stolen camper, where the Defendants allege that the Plaintiff was living. According to the Defendants, the contents to be used as evidence were inventoried,[1] and then the camper and its remaining contents were released to the victim, Holiday Kampers of Spartanburg. Apparently, the Plaintiff was arrested on June 18, 2007, and charged with grand larceny and receiving stolen goods.[2] The Defendants assert that the two fishing rods and reels were seized and inventoried, but they assert that they have "no knowledge of the remaining property ever being in the camper," and they claim that they did not seize the remaining property. (Entry 35-1 at 4.) The Defendants also point out that the Plaintiff failed to inform the Court of the fact that he was charged with the theft of the camper and the fact that the materials inventoried were done so after the camper was identified as a stolen vehicle.

As grounds for relief, the Defendants assert that the Plaintiff's complaint fails to state a claim; that the Plaintiff's claims are not ripe because his state charges are still

---

[1] The Defendants have identified the following items taken from the camper and inventoried: several cigar and cigarette butts, pack of empty Newport cigarettes, Taco Bell plastic cup, Mountain Dew can, Coca Cola can, Razors, pad with writing on it and two pieces of paper with writing, brush, 1 used tissue, Bacardi Silver 03 bottle, several bills and papers with the name James Douglas Tinsley II on them, piece of paper with Reservaton IGA dated for 12-2-06, tag license # 558 TWP SC, and 1 Scientific Anglers rod and reel and 1 Abu Garcia rod and reel. (Entry 35-1 at 2; Entry 35-4 at 6.)

[2] When the Defendants filed their motion for summary judgment, these charges were still pending in the Court of General Sessions for Spartanburg County. In fact, on June 25, 2010, the Plaintiff filed a motion to stay these proceedings until after the disposition of his state charges.

Also, it should be noted that after being arrested, Tinsley took up residence in another camper owned by Justice and was again arrested in connection with the possession of stolen goods on January 29, 2008. Following that arrest, Tinsley filed a lawsuit similar to the instant action, suing law enforcement officials for the illegal seizure of non-stolen goods. The Court has appointed counsel for Tinsley in that action and it remains pending at this time. See Tinsley v. Singleton, et al., Civil Action No. 8:08-532-SB.

5

pending; that the Plaintiff's claims do not rise to the level of a Constitutional violation; that the Defendants are entitled to qualified immunity; that the County of Spartanburg and Defendant Wright should be dismissed pursuant to the doctrine of *respondeat superior*; that they are entitled to Eleventh Amendment immunity; that Spartanburg County is not a "person" under section 1983; that the Defendants should be dismissed to the extent that they are sued in their official capacities; and that they are entitled to immunity from any alleged state law claims pursuant to the South Carolina Tort Claims Act.

The Plaintiff filed a response in opposition to the Defendants' motion for summary judgment, a motion to strike irrelevant and immaterial evidence (which the Magistrate Judge denied), and a motion for partial summary judgment. The Defendants filed a reply to the Plaintiff's response as well as a response to the Plaintiff's motions and a motion to strike the Plaintiff's reply. The Plaintiff then filed a motion to stay the proceedings and request for depositions (seeking to take the deposition, at the Court's expense, of Paul Thomas of Holiday Kamper to establish whether the Plaintiff's personal property was inside the camper when it was returned to Holiday Kamper).



In his pleadings, the Plaintiff asserts that genuine issues of material fact exist. For instance, he states: "The defendants contend that these items were not in the RV and that they did not seize or steal them. The Plaintiff has submitted an affidavit and photographs demonstrating that these items were inside the RV and that the defendants did seize or steal them even though they may have purposefully failed to include them in the inventory." (Entry 38 at 10.) In addition, the Plaintiff opposes all of the arguments raised by the Defendants and claims that he is entitled to summary judgment as to the Defendants' liability; however, he admits that issues of fact exist as to damages.

6

In the R&R, the Magistrate Judge first concluded that a stay of these proceedings was not necessary based on the Plaintiff's assertion that the personal property allegedly seized was not seized as evidence and is not being used in his criminal trial. Next, the Magistrate Judge concluded that the Court should not bear the costs of the deposition of Paul Thomas of Holiday Kampers. Finally, the Magistrate Judge concluded that the Plaintiff's action is barred by the United States Supreme Court's decision in Hudson v. Palmer, 468 U.S. 517 (1984).



In his written objections, the Plaintiff asserts that the Magistrate Judge again misconstrued his complaint to state a due process violation rather than a Fourth Amendment violation. The Plaintiff acknowledges that the loss of personal property, even if it is a result of intentional or negligent handling, does not violate the Due Process rights of the owner as long as the state provides an adequate post-deprivation remedy. However, the Plaintiff argues that this is only true if the defendants did not violate some other Constitutional right in coming to possess the items. According to the Plaintiff, the Defendants did violate some other Constitutional right in coming to possess his property, namely, the Fourth Amendment, and he claims that the continued retention of his personal property is the result of the county's policy and custom. In addition, the Plaintiff claims that the property at issue is not relevant to any pending criminal charges, and he asserts that the fact that the Defendants may have lost or stolen the property after the fact is not relevant to his Fourth Amendment claim. In essence, the Plaintiff contends that the R&R fails to address the issue raised by his complaint, and he urges the Court not to adopt the R&R. In addition, he again claims that he is entitled to summary judgment as to the issue of the Defendants' liability but that a trial is necessary as to the issue of damages.

## STANDARD OF REVIEW

### I. The Magistrate Judge's R&R

The Court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered and may accept, reject, modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). Any written objection must specifically identify the portion of the R&R to which the objection is made and the basis for the objection. Id.

### II. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. Perini Corp. v. Perini Constr. Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational tried of fact to find for the nonmoving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." Celotex,

477 U.S. at 327.

## DISCUSSION

In Parratt v. Taylor, 451 U.S. 527, 529 (1981), the Supreme Court considered whether an inmate at a Nebraska prison who ordered $23.50 worth of hobby materials by mail could sustain a section 1983 procedural due process claim for the negligent loss of the materials by prison officials. 451 U.S. 527, 529 (1981). The Court concluded that the prisoner did not possess a viable section 1983 claim because, in relevant part, "the deprivation did not occur as a result of some established state procedure," but rather "as a result of the unauthorized failure of agents of the State to follow established state procedure," and because "the State of Nebraska has provided respondent with the means by which he can receive redress for the deprivation." Id. at 543.

In Hudson v. Palmer, the Court extended the Parratt holding to intentional deprivations of property.[3] 468 U.S. 517. In Hudson, the plaintiff, an inmate at a Virginia prison, alleged that a correctional officer had intentionally destroyed some of his non-contraband property during a search of his cell. 468 U.S. at 519-20. The Supreme Court determined that the logic of Parratt applied, explaining that "[t]he underlying rationale of Parratt is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." 468 U.S. at 533. Thus, pursuant to the Parratt/Hudson doctrine, such a deprivation "does not constitute a violation

---

[3] In Daniels v. Williams, 474 U.S. 327, 330-31 (1986), the Court overruled Parratt to the extent that it held that mere negligence on the part of a state employee may "deprive" one of a protected interest under the Due Process Clause.

9

of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Id.

Here, the Magistrate Judge concluded that the holdings of Parratt and Hudson apply to this action and that the Plaintiff cannot prevail on his due process claim because he has not alleged that the state post-deprivation remedies, including state tort remedies, are inadequate. Accordingly, the Magistrate Judge recommended granting the Defendants' motion for summary judgment.

After review, the Court agrees with the Magistrate Judge that the holdings of Parratt and Hudson bar the Plaintiff's due process claim stemming from the deprivation of his property. Nevertheless, in his objections, the Plaintiff asserts that "the Magistrate Judge has misconstrued [his] complaint as alleging a due process violation rather than a Fourth Amendment violation."[4] (Entry 63 at 1.) Thus, the Court must consider whether the Plaintiff may proceed, not on his due process claim, but on his Fourth Amendment claim.

The Fourth Amendment secures the right of people to be free from "unreasonable searches and seizures" and provides that "no warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Whether a search and seizure are unreasonable under the Fourth Amendment depends on the facts and circumstances of each case. Here, it does not appear from the current record that the officers had warrants to search or seize the items at issue, but it does appear that the officers had probable cause to believe that the camper was stolen at the time of its seizure. Nevertheless, the Court recognizes that,

---

[4] It should be noted that the Plaintiff's amended complaint does state a due process claim; however, it also states a Fourth Amendment claim, which it appears that the Magistrate Judge did not consider in the R&R.

but for a few valid exceptions to the warrant requirement, warrantless searches and seizures are *per se* unreasonable, and here, the Court believes that several questions of fact exist as to the reasonableness of the alleged search and seizure of the Plaintiff's personal items. For example, some issue exists (despite the Plaintiff's assertions to the contrary) as to whether the Plaintiff even had a reasonable expectation of privacy in the stolen camper. Leaving that aside, however, it is clear from the current record (which includes the parties' competing affidavits) that material issues of fact exist not only as to the constitutionality of the warrantless search and seizure as a whole but also as to whether the Defendants actually seized the Plaintiff's personal items at all.

Here, the Plaintiff claims that he does not challenge the search of the camper or the seizure of any evidence that may be used against him with respect to his pending criminal charges, but instead, that he challenges only the seizure of lawfully-owned property that is not being used as evidence. The Plaintiff states: "Contrary to what the Defendants allege, Plaintiff is not asking this Court to make a determination as to whether Defendants had probable cause to seize the RV and other evidence that may be used in a criminal trial. Rather, Plaintiff is asking this Court to find that the defendants violated the Fourth Amendment when they conducted a warrantless seizure of lawfully owned property for such a duration that it became unreasonable." (Entry 40 at 13.) What the Plaintiff does  not appreciate, however, is that the question of whether the Defendants violated the Fourth Amendment when they allegedly conducted a warrantless seizure of his personal property[5]

---

[5] Because the Court believes that genuine issues of material fact exist regarding what actually happened and how it happened, the Court does not agree with the Plaintiff's characterization that the Defendants, as a matter of law, violated the Fourth Amendment in seizing his personal property.

11

is inextricably intertwined to other questions regarding the constitutionality of the search and seizure of the camper as a whole; and for the Court to answer the former question, it must answer the latter questions, creating the risk of this Court's unnecessary intrusion into the Plaintiff's state prosecution (despite the Plaintiff's contention that he is not challenging, in this action, the search and seizure of any evidence that may be used against him in the underlying state action). In other words, the Plaintiff's criminal charges are still pending, and this Court believes that the State should be free to pursue its prosecution of the Plaintiff without this Court intervening and weighing in on constitutional issues relevant to that prosecution. See, e.g., Younger v. Harris, 401 U.S. 37, 44 (1971) (addressing the comity principle by referencing the policy of "Our Federalism," which recognizes that "anxious though [the national government] may be to vindicate and protect federal interests, [it] always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States").

The Court recognizes that this case differs from the typical case involving Younger abstention. In the typical case, the court dismisses the federal suit, particularly where a criminal defendant seeks to enjoin a concurrent state prosecution. Here, the Plaintiff does not seek to enjoin his state prosecution. Here again, however, the Court believes that the constitutional issues presented in this case are so related to the constitutional issues presented in the underlying state prosecution that, to answer the questions in this case, the Court would need to (at the very least) consider the questions presented in the underlying state prosecution. Ultimately, because the Court does not wish to needlessly and inappropriately interfere in the underlying state prosecution, the Court believes that the proper remedy is to stay these proceedings until the state court has the

opportunity to address the relevant constitutional issues surrounding the search and seizure of the camper as a whole.[6]

Next, because the Court believes that genuine issues of material fact exist regarding what actually happened, the Court cannot determine at this time whether Defendants Wight and Bogan are entitled to qualified immunity. Nevertheless, the Court agrees with the Defendants that the Eleventh Amendment, which divests this Court of jurisdiction to entertain a suit brought against the State of South Carolina or its integral parts, bars the Plaintiff's claims against the Defendants in their official capacities (insofar as the Plaintiff seeks money damages). See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) (holding "that in the absence of consent, a suit in which the State . . . is named as a defendant is proscribed by the Eleventh Amendment"); Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (finding that a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office and, as such, is no different from a suit against the state itself).

Moreover, the Court finds that the Plaintiff has failed to present any genuine issues of material fact as to his supervisory liability claims. In section 1983 claims, neither municipalities nor superiors can be held liable under theories of *respondeat superior* liability. Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978). However, a supervisor may be held liable for the actions of a subordinate if he had:

> (1) actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury

---

[6] Moreover, it is clear that a court does not have discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding. Also, a stay will avoid any future statute of limitations problems.

13

to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994) (citations omitted). A supervisor is deliberately indifferent where the misconduct of the subordinate is "widespread, or at least has been used on several different occasions," and the supervisor fails to correct the behavior in the face of "documented widespread abuses." Randall v. Prince George's County, 302 F.3d 188, 204, 206 (4th Cir. 2002). Here, although the actions of Defendants Wight and Bogan may have violated the Plaintiff's constitutional rights, the Court finds that the Plaintiff has failed to present any convincing evidence to show that Sheriff Wright was deliberately indifferent to the alleged offensive practices or to show a sufficient causal link because Sheriff Wright's alleged inaction and the alleged injury suffered by the Plaintiff.

Next, a municipality may be liable under section 1983 when a policymaker officially promulgates or sanctions unconstitutional law, or whether the municipality is deliberately indifferent to the development of an unconstitutional custom. City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988). But a municipality is not liable for mere "isolated incidents of unconstitutional conduct by subordinate employees. . . . Rather, there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice." Lytle v. Doyle, 326 F.3d 463 (4th Cir. 2003) (quotations and citations omitted). And here, the Court finds that – despite the Plaintiff's conclusory allegations to the contrary – the record is entirely devoid of evidence to create a genuine issue of fact as to whether the County was deliberately indifferent to the development of the Plaintiff's claim or as to whether the alleged injury was the result of some policy or custom of the County (or of the

14

Sheriff for that matter). See Monell, 436 U.S. at 690-91. State differently, the Plaintiff cannot rest his claims on some conclusory allegation that a policy exists, offer no supporting evidence, and then expect to survive summary judgment.

For the foregoing reasons, the Court finds that summary judgment is appropriate in favor of Spartanburg County and Defendant Chuck Wright. In addition, the Court believes that Defendants Wight and Bogan are entitled to summary judgment in their official capacities insofar as the Plaintiff seeks monetary damages. However, because the Court believes that genuine issues of material fact exist with respect to the liability of Defendants Wight and Bogan in their individual capacities, the Court declines to grant the Defendants' motion for summary judgment on this issue[7]

## CONCLUSION

Based on the foregoing, the Court agrees with the Magistrate Judge that Parratt and Hudson bar the Plaintiff's due process claim stemming from the deprivation of his property. Nevertheless, because the Magistrate Judge did not address the Plaintiff's Fourth Amendment claim, the Court declines to adopt the Magistrate Judge's recommendation that the Court grant the Defendants' motion for summary judgment outright. Instead, the Court finds that genuine issues of material fact exist with respect to whether Defendants Bogan and Wight, acting in their individual capacities, violated the Plaintiff's Fourth Amendment rights. In contrast, the Court finds that Defendants Spartanburg County and Defendant Chuck Wright are entitled to summary judgment based on the current record. In addition, the Court finds that Defendants Bogan and Wight are entitled to summary

---

[7] Likewise, the Court declines to grant the Plaintiff's motion for summary judgment on the issue of the Defendant's liability.

judgment with respect to the Plaintiff's claims against them in their official capacities for monetary relief. Thus, the Court grants in part and denies in part the Defendants' motion for summary judgment (Entry 35), and the Court denies the Plaintiff's motion for partial summary judgment (Entry 40).[8]

Finally, because the Court believes that the constitutional issues presented in this case are inextricably intertwined with the constitutional issues presented in the ongoing state prosecution, the Court believes that a stay of this matter is appropriate until the conclusion of the Plaintiff's state prosecution. Accordingly, the Court grants in part the Plaintiff's motion to stay and request for depositions (Entry 52). The Court denies the Plaintiff's motion (Entry 52) with respect to his request for depositions.[9]

Therefore, this action is hereby stayed until the conclusion of the Plaintiff's state criminal prosecution, at which point the parties are directed to petition the Court to lift the stay in this action. At that point, the Court will give the parties the opportunity to file additional motions and/or memoranda depending on the outcome of the state case.

**AND IT IS SO ORDERED.**

Sol Blatt, Jr.
Senior United States District Judge

March 3/, 2011
Charleston, South Carolina

---

[8] At this point, it appears that the only remaining claims are the Plaintiff's Fourth Amendment claims against Defendants Wight and Bogan in their individual capacities and his claims for non-monetary relief against Wight and Bogan in their official capacities.

[9] In the R&R, the Magistrate Judge noted that civil litigants, including *pro se* litigants, generally must bear the costs of their litigation, and she recommended that the Court deny this request. The Court agrees with the Magistrate Judge's analysis and denies the Plaintiff's request for depositions.